UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIANWEN CHEN,<br><br>Petitioner,<br>v.<br><br>RAUL MALDONADO, Warden of Metropolitan Detention Center, *et al.*,<br><br>Respondents. | **<u>MEMORANDUM & ORDER</u>**<br>26-CV-4773 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

On July 13, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner Jianwen Chen at the USCIS office in Bethpage, New York, following his asylum interview. Petitioner was ultimately transferred to the Metropolitan Detention Center in Brooklyn, where he remains detained. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Petition").[1]

For the reasons that follow, his Petition is DENIED to the extent it challenges the constitutional adequacy of the initial custody determination, and DISMISSED for lack of jurisdiction to the extent it asks the Court to review the discretionary determinations made during Petitioner's initial custody determination.

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Petitioner is a citizen of the People's Republic of China who initially entered the United States on a B-2 visitor visa, with authorization to remain in the United States until July 7, 2016. *See* ECF No. 5 ("Response") at 1–2. Petitioner remained in the United States beyond the period authorized by his visa and timely filed an application for asylum. *See* Petition ¶ 4; Response at 2; ECF No. 8 ("Reply") at 9. Approximately seven years after his arrival, on February 8, 2023, a grand jury in Cuyahoga County, Ohio, indicted Petitioner on one count of Engaging in a Pattern of Corrupt Activity, in violation of Ohio Rev. Code § 293.32; one count of Conspiracy, in violation of Ohio Rev. Code § 2923.01; one count of Promoting Prostitution, in violation of Ohio Rev. Code § 2907.22; six counts of Money Laundering, in violation of Ohio Rev. Code § 1315.55; and one count of Possessing Criminal Tools, in violation of Ohio Rev. Code § 2923.24. *See* Response at 2. Petitioner was subsequently arrested in connection with these charges, and, on June 3, 2024, he pled guilty to Possessing Criminal Tools, in violation of Ohio Rev. Code § 2923.24, and was sentenced to pay costs and a fine of $750. *Id.* On July 13, 2026, Petitioner appeared at the USCIS office in Bethpage, New York, for his asylum interview. *See* Petition ¶¶ 15, 37. USCIS advised ICE that Petitioner was present at the USCIS office and that he appeared to be unlawfully present in the United States. *See* Response at 2. Upon receipt of this information, ICE officers conducted records checks and confirmed that Petitioner "lacks immigration status" and "is removable under U.S. immigration laws." *Id.*; ECF Nos. 5-2; 5-3; 5-5. At approximately 8:45 a.m., ICE Acting Supervisory Detention and Deportation Officer

[2] The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

("ASDDO") Patrik Heerey issued a Form I-200 Warrant of Arrest and a Notice to Appear.[3] *See* Response at 2. Later that morning, ICE officers identified Petitioner in the waiting area of the USCIS office, provided him with a copy of the Warrant of Arrest, and placed him under arrest. *Id.*

Petitioner was then transported to a post-arrest processing center where he received an individualized custody determination by Deportation Officer ("DO") William Morrow. *See* ECF No. 9-1 ¶ 5. The individualized custody determination entailed, among other things, interviewing Petitioner and running a criminal records check. Response at 2. The criminal records check reported Petitioner's Ohio criminal history and, in the exercise of his discretion under 8 U.S.C. § 1226(a), DO Morrow determined that Petitioner had not established that he "does not pose a danger to persons or property." ECF No. 6-1 (INA § 236(a) Initial Custody Determination Form); *see also* ECF No. 9-1 ¶ 6. The form was then forwarded to ASDDO Heerey who concurred with the custody determination. Response at 2. ICE served Petitioner with Form I-286, Notice of Custody Determination, advising him of ICE's decision to detain him under Section 1226(a) and of his right to request a custody determination hearing before an Immigration Judge ("IJ"). *Id.* at 2–3. Petitioner signed the form, acknowledging receipt, and checked the box requesting IJ review of his custody determination. *See* ECF No. 5-4.

Since his arrest, Petitioner has submitted two separate requests for a custody redetermination hearing before an IJ and has withdrawn both of those requests. *See* Response at 3; Reply at 2–3. At a recent Master Calendar Hearing in Immigration Court, Petitioner's counsel

[3] Later that same day, ASDDO Heerey issued a superseding Notice to Appear setting forth, among other things, Petitioner's address. *See* ECF Nos. 5-1 ¶ 12; 5-3; 5-5.

informed the IJ that Petitioner intends to file a new motion for custody redetermination. *See* Response at 3. To date, Petitioner has not done so. *See* Reply at 2–5.

On August 5, 2026, Petitioner, through counsel, initiated the instant action by filing a petition for a writ of habeas corpus. *See generally* Petition. Among other things, Petitioner states that: (1) "Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) violates the plain language of the Immigration and Nationality Act"; (2) Petitioner's detention violates the Fifth Amendment's Due Process Clause; (3) "Petitioner is neither a flight risk nor a danger to the community"; and (4) Petitioner is not required to exhaust administrative remedies, "including a bond or an appeal thereof to the [Board of Immigration Appeals ("BIA")], before seeking habeas relief." *Id.* at 9–18.

That same day, the Court issued an Order to Show Cause directing the government to show cause "why the petition should not be granted, and why Respondents should not be ordered to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026)," and directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *See* Aug. 6, 2026, Text Order.

The government filed its response on August 12, 2026, in which it states that "Petitioner was detained pursuant to 8 U.S.C. § 1226(a)." Response at 3. The government also notes that the determination "that Petitioner should remain detained pending a final administrative decision in removal proceedings . . . was based on the totality of the circumstances, including Petitioner's . . . prior out-of-state criminal history, and the conclusion that Petitioner presented a danger to the public." *Id.* at 2. Petitioner filed his Reply two days later. *See* Reply.

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *da Cunha*, 175 F.4th 61, which compels the decision that Section 1226(a), not Section 1225(b)(2)(A), applies to a non-citizen who, like Petitioner, is already present in the United States and, "sought admission in the past but no longer is." *da Cunha*, 175 F.4th at 77–78.

## DISCUSSION

Petitioner argues that his detention is unlawful because: (1) "[his] detention under 8 U.S.C. § 1225(b)(2)(A) violates the plain language of the Immigration and Nationality Act"; (2) his detention violates the Fifth Amendment's Due Process Clause; (3) "[he] is neither a flight risk nor a danger to the community"; and (4) he is not required to exhaust administrative remedies, "including a bond or an appeal thereof to the BIA, before seeking habeas relief." *Id.* at 2, 9–18.

Petitioner's arguments are puzzling. To start, although Petitioner alleges he is being detained pursuant to Section 1225(b)(2)(A), which provides for mandatory detention, *see*

Petition at 2, 9–10, the government is clear that its position is that "Petitioner was detained pursuant to 8 U.S.C. § 1226(a)," Response at 3. He also alleges that he "was arrested without notice, without an individualized assessment of risk, and without any opportunity to be heard," Petition ¶ 52, but this allegation is directly contradicted by the record. In its Response and supporting documents, the government represents that, on the day Petitioner was arrested, ICE conducted an initial custody determination and determined that "Petitioner presented a danger to the public." Response at 2. This determination was based on several factors including Petitioner's out-of-state criminal history. *Id.*; *see also* ECF No. 6-1 (stating on the Initial Custody Determination form that Petitioner "poses a danger to [the] public" and "Subject was arrested 03/01/2023 by the Cuyahoga County Sheriff's Office for Money Laundering"). The government also represents, again with corroborating documentary evidence, that Petitioner was served with (i) the Warrant of Arrest (Form I-200); (ii) the Notice of Custody Determination (Form I-286), advising him of ICE's decision to detain him under Section 1226(a); and (iii) a Notice to Appear, which Petitioner signed. *See* Response at 2–3; ECF No. 5-1 (a completed Form I-200); ECF No. 5-4 (a completed Notice of Custody Determination form); ECF No. 5-3 (the original Notice to Appear); ECF No. 5-5 (the superseding Notice to Appear); *see also* ECF No. 6-1 (a completed Initial Custody Determination form).[4]

---

[4] While initially the Court expressed concern about the Initial Custody Determination form, *see* Aug. 13, 2026, Text Order, the government submitted further testimonial evidence in the form of a sworn declaration by ASDDO Patrick Heerey, explaining what occurred. *See* ECF Nos. 6 and 6-1. The Court finds that although the process the government described in its response to the Court's August 13, 2026, Order could certainly have been more robust, the problem here was not with the process itself but with the documentation of that process. Despite the Court's initial concern, there is nothing in the record that undermines the fact that Petitioner received an individualized custody determination that comports with the procedures of Section 1226(a).

Petitioner's next argument—that he "is neither a flight risk nor a danger to the community," Petition ¶ 42—only compounds the problem because assessment of one's flight risk or danger to the community is applicable only in instances where detention is discretionary, as is the case with Section 1226(a). *Compare* 8 U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding.") (emphasis added), *with* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States.") (emphasis added). In lieu of providing supporting facts for this argument, Petitioner spends the bulk of his briefing arguing that there is no statutory requirement that he exhaust administrative remedies before he may petition this Court for a writ of habeas corpus. *See* Petition at 11–18; Reply at 2–5, 8–10.[5] Petitioner's overly generalized arguments about administrative exhaustion do not persuade the Court that administrative review, including a request for a bond hearing before an IJ, would not "offer[] a realistic opportunity for relief." *Id.* at 14.

Notably, since his arrest, Petitioner has submitted two separate requests for a custody redetermination hearing before an IJ and has withdrawn both of those requests. *See* Response at 3; Reply at 2–3. Had Petitioner not withdrawn his two prior requests for a bond hearing, however, he would have had the opportunity to present evidence to an IJ regarding his detention. *See, e.g.*, *J.R.U. v. Genalo*, No. 26-cv-4332, 2026 WL 1864975, at *10 (S.D.N.Y. June 29, 2026) (listing evidence petitioner provided at bond hearing); *Rahman*, 2026 WL 1180138, at *2 (noting

[5] The Court need not address this argument given its conclusion that Petitioner's detention under 8 U.S.C. § 1226(a) does not violate the Due Process Clause of the Fifth Amendment.

that, at a bond hearing, "ICE will be at liberty to establish—and [petitioner] will be at liberty to refute—that he presents a danger to the community and/or a risk of flight").[6]

Petitioner had another opportunity to present evidence in connection with his Petition but failed to take advantage of it. The government's stated reason for detaining Petitioner is that he poses a danger to the community, not that he is a flight risk. Of course, Petitioner could have presented evidence in his Reply to refute the government's reason for detaining him, *see* Aug. 6, 2026, Text Order, but he did not meaningfully engage with this argument. Instead, he tried to shift the "burden of justifying continued detention by clear and convincing evidence" onto the government, when in fact, it is Petitioner "who bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

Petitioner's internal contradictions notwithstanding, he asserts that he had no "meaningful opportunity to contest custody" following his arrest and that he is "neither a flight risk nor a danger to the community." Petition ¶¶ 31, 42. When taken together, Petitioner's arguments are, in effect, a challenge to the *result* of his initial custody determination dressed up as a constitutional challenge to the statutory basis for detention that Petitioner believes applied. That challenge is precisely of the sort over which this Court lacks jurisdiction.

Indeed, Section 1226(e) provides that "discretionary judgment regarding the application of [Section 1226] shall not be subject to review," and that "[n]o court may set aside any action or

6 Indeed, the entire point of the bond hearing is for an immigration judge to determine whether Petitioner has demonstrated "by clear and convincing evidence, that release would not pose a danger to other persons or to property," and, if that burden is satisfied, whether he "further demonstrate[d], by clear and convincing evidence, that [he] is likely to appear for any scheduled proceeding or interview." *See* 8 C.F.R. § 1003.19(h)(3).

decision . . . regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e); *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003) *accord Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("§ 1226(e) precludes an alien from 'challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.'").

Of course, Section 1226(e) does not bar the Court from "assess[ing] whether and how correct procedures were applied at all . . . and ultimately, whether [Petitioner]'s detention comports with due process." *See Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *3 (E.D.N.Y. May 19, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). But the Court has assessed the relevant procedures applied here and based on the available record, concludes that Petitioner's detention pursuant to Section 1226(a), the initial custody determination, and other procedural aspects comport with due process.

Moreover, the reasons for Petitioner's detention are not objectionable with respect to their constitutionality, and Petitioner does not present "questions of law or constitutional challenges to the application of § 1226." *See Fontanelli as Next Friend of Bernal Garcia v. Francis*, No. 25-cv-7715, 2025 WL 2773234, at *4 (S.D.N.Y. Sept. 29, 2025).

As the Court previously noted, at bottom, Petitioner is challenging the *result* of his initial custody determination, not its constitutionality. And, because "[a] district court has no authority to review ICE's discretionary determinations or otherwise question their propriety," *Fontanelli*, 2025 WL 2773234, at *4, ICE's determination that Petitioner poses a danger to the community is not subject to review, *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) (expressly not reaching whether government's "proffered basis in its decision to detain [petitioner] is substantively inadequate in some respect," and noting the government "has wide

latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court”).

## **CONCLUSION**

For these reasons, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED to the extent it challenges the constitutional adequacy of the initial custody determination, and DISMISSED for lack of jurisdiction to the extent it asks the Court to review ICE’s discretionary determinations made during Petitioner’s initial custody determination.

For the avoidance of doubt, nothing in this Order shall be construed as a determination of Petitioner’s right to seek a custody determination hearing before an Immigration Judge (“IJ”) that comports with due process. At any such hearing, the IJ shall meaningfully consider alternatives to detention and Petitioner’s ability to pay if a monetary bond is set.

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 21, 2026